**UNITED STATES of America, Appellee,**

v.

**Yvonne MELENDEZ–CARRION, Hilton Fernandez-Diamante, Luis Alfredo Colon Osorio, Filberto Inocencio Ojeda Rios, Isaac Camacho-Negron, Orlando Gonzales Claudio, Elias Samuel Castro-Ramos and Juan Enrique Segarra Palmer, Defendants,**

**Filiberto Inocencio Ojeda Rios and Juan Enrique Segarra Palmer, Defendants-Appellants.**

Nos. 1053, 1065, Dockets 87–1007, 87–1079.

United States Court of Appeals, Second Circuit.

Argued April 14, 1987.

Decided June 2, 1987.

Michael E. Deutsch, Chicago, Ill. (William Kunstler, New York City, Juan Mari Bras, Rio Diedras, P.R., of counsel), for defendant-appellant Filiberto Inocencio Ojeda Rios.

Leonard I. Weinglass, New York City, for defendant-appellant Juan Enrique Segarra Palmer.

Albert S. Dabrowski, Asst. U.S. Atty., Hartford, Conn. (Stanley A. Twardy, Jr.,

U.S. Atty., New Haven, Conn., Carmen Espinosa Van Kirk, John A. Danaher III, Asst. U.S. Attys., Hartford, Conn., Maury S. Epner, U.S. Dept. of Justice, Washington, D.C., of counsel), for appellee U.S.

(Center for Constitutional Rights, Arthur Kinoy, Margaret Ratner, New York City, of counsel), for amici curiae Asian-American Legal Defense and Educ. Fund, Nat. Counsel of Black Lawyers and Nat. Lawyers Guild in support of defendants-appellants.

Before VAN GRAAFEILAND, PRATT and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants Filiberto Inocencio Ojeda Rios and Juan Enrique Segarra Palmer appeal from orders of the United States District Court for the District of Connecticut (Clarie, J.), denying their motions for conditional release. Judge Clarie determined that, under the standard enunciated in *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir.1986), appellants' due process rights were not violated by their continued detention pending trial. Both appellants have been detained for more than nineteen months to date.

On appeal, appellants contend that their continued pretrial detention constitutes a *per se* due process violation. In addition, they maintain that the district court misapplied the *Gonzales Claudio* standard and that the evidence before the district court was insufficient to support a finding that they presented risks of flight. We affirm.

## BACKGROUND

The general background of the instant appeal is set forth in *United States v. Melendez-Carrion*, 790 F.2d 984 (2d Cir.), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986), familiarity with which is assumed. Only those facts necessary for a discussion of the issues presented on this appeal will be set forth below.

On August 28, 1985, a Hartford grand jury returned an indictment against appellants and fifteen others, charging them with offenses committed in connection with the September 12, 1983 robbery of $7.6 million from the Wells Fargo depot in West Hartford, Connecticut. A superseding indictment was returned by a New Haven grand jury on March 21, 1986, which charged sixteen of the original seventeen defendants with the same and additional violations of federal criminal statutes, and added three new defendants.

Responsibility for the Wells Fargo robbery has been claimed by *Los Macheteros* (the machete wielders), a paramilitary terrorist group that is dedicated to achieving independence for Puerto Rico. Since 1978, *Los Macheteros* has claimed responsibility for numerous other violent acts, including murder, robbery, destruction of property, theft of explosives and kidnapping. There is evidence that Ojeda Rios and Segarra Palmer are leaders of *Los Macheteros*, and that they participated in the conspiracy surrounding the robbery, as well as the robbery itself.

Both appellants were arrested on August 30, 1985: Ojeda Rios in Puerto Rico and Segarra Palmer in Dallas, Texas. After removal to Connecticut and bail hearings before Magistrate F. Owen Eagan, Judge Clarie continued the detention, which he previously had ordered, of Ojeda Rios, Segarra Palmer and seven co-defendants on risk of flight and/or dangerousness grounds, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142(e) (Supp. III 1985).

The district court made numerous findings of fact in support of its decision to continue pretrial detention. As to Ojeda Rios, the district court determined that he was the head of military operations for *Los Macheteros*, as well as a past member of its Central and Directive Committees, and was known by the code names "Luis" and "Greco." Judge Clarie found that Ojeda Rios had traveled extensively in the United States and in foreign countries using aliases, and had obtained passports and drivers licenses in various false names. He further found that Ojeda Rios had been identified as playing a central role in "La Gaviota," which was a *Macheteros* code name for the attack on Muniz Air Base, in Puerto

Rico, on January 12, 1981. During that attack, nine A–7 aircraft were destroyed at a cost of $40 million. Ojeda Rios also was identified as having participated in the light anti-tank rocket attack on the federal courthouse in Hato Rey, Puerto Rico, on October 30, 1983, and as having helped plan "El Chivo," a *Macheteros* plan to free and then assassinate an incarcerated former *Macheteros* member suspected of being an informant.

As to Segarra Palmer, the district court found that he was a long-time salaried member of *Los Macheteros*, and operated two businesses as fronts for the organization. The court determined that Segarra Palmer served on the Central and Directive Committees of *Los Macheteros*, was a leader of Zone One, was known by the code name "Junior," used aliases and false addresses extensively, and possessed drivers licenses and a passport in a false name. Judge Clarie found that the automobile Segarra Palmer used was registered under an alias and at a false address, and that he had traveled extensively to Mexico, without the apparent means to do so. The district judge also found that Segarra Palmer had organized and taken part in the attack at Sabina Seca on a United States Navy bus taking sailors to a radar station, on December 3, 1979, in which two sailors were killed and nine wounded. Judge Clarie further found that Segarra Palmer had taken part in "La Gaviota," which is described above.

Appellants' and six co-defendants' appeals from the district court's orders were consolidated in *United States v. Melendez-Carrion*, 790 F.2d 984 (2d Cir.1986). Luz Maria Berrios-Berrios, Segarra Palmer's wife, appealed separately. *United States v. Berrios-Berrios*, 791 F.2d 246, 253 (2d Cir.) (remand to reconsider whether, despite risk of flight, viable alternatives existed to continued pretrial detention of Berrios-Berrios), *cert. dismissed*, — U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986).

In *Melendez-Carrion*, although we held that pretrial detention on dangerousness grounds lasting more than eight months was unconstitutional, we affirmed the lawful detention of six of the defendants, in-cluding Segarra Palmer and Ojeda Rios, on risk of flight grounds. We remanded the detention orders regarding defendants Isaac Camacho-Negron and Orlando Gonzales Claudio, who were detained solely on grounds of dangerousness, to consider whether their continued detention was justified on risk of flight grounds. *Melendez-Carrion*, 790 F.2d at 1004–05. The provision of section 3142(e) authorizing preventive detention on grounds of danger to the community subsequently was found unconstitutional on its face by the panel majority in *United States v. Salerno*, 794 F.2d 64 (2d Cir.1986), *rev'd*, — U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

On remand, Judge Clarie determined that the detention of both Gonzales Claudio and Camacho-Negron should be continued on risk of flight grounds. Those two defendants appealed the district court's order. In *United States v. Gonzales Claudio*, 806 F.2d 334 (2d Cir.1986), we enunciated the standard of review for considering the constitutional issue of whether continued detention on risk of flight grounds violates due process limitations. Based on that standard and on the particular circumstances presented on appeal, we vacated the district court's orders and remanded for "the prompt setting of reasonable conditions of release in accordance with 18 U.S.C. § 3142(c)." *Id.* at 343.

In December 1986, appellants and their five remaining co-defendants, all of whom were being detained pending trial on risk of flight grounds, moved in the district court for conditional release pending trial. Relying on the due process standard of *Gonzales Claudio*, all seven defendants alleged that their continued pretrial detention violated their constitutional rights to due process. Judge Clarie ordered the release of the five co-defendants, but he denied appellants' motions.

The district judge determined that the continued detention of both appellants did not violate the *Gonzales Claudio* due process standard. He distinguished Segarra Palmer and Ojeda Rios from their released co-defendants by noting that both appellants had very limited ties to the communi-

ty, previously had attempted to flee, and were charged as organizers of the robbery and leaders of the conspiracy. This consolidated appeal followed.

## DISCUSSION

In *United States v. Melendez-Carrion*, 790 F.2d 984 (2d Cir.), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986), we affirmed the district court's orders continuing the pretrial detention of Segarra Palmer and Ojeda Rios on risk of flight grounds. *Id.* at 994. We rejected appellants' procedural objections, *id.* at 990–94, and noted that appellants had not challenged the district court's findings that they presented a risk of flight sufficient to support their detention, *id.* at 994. At the time our decision in *Melendez-Carrion* was issued, appellants had been detained for approximately eight months. The sole issue on this appeal, therefore, is whether the passage of an additional eleven months since the issuance of our *Melendez-Carrion* decision has violated appellants' due process rights. We hold that it has not.

■ The Bail Reform Act of 1984 provides that a court shall order a defendant detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e) (Supp. III 1985). The district court must "engage in a two step inquiry before ordering a defendant released or detained pending trial." *United States v. Shakur*, 817 F.2d 189, 194 (2d Cir.1987) (citing *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir.), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986)). Initially, the district court must determine if the defendant presents a risk of flight. *Id.* If the court finds that a risk of flight is presented, it must then determine whether any conditions will reasonably assure the defendant's presence at trial if he is released. *Id.* at 194–95 (citing *Berrios-Berrios*, 791 F.2d at 250).

Appellants do not contest the district court's predicate factual findings or ultimate conclusions under the Bail Reform Act. Rather, they claim that their contin-

ued pretrial detention violates their due process rights. We turn, therefore, to an examination of whether appellants' continued detention since our decision in *Melendez-Carrion* is violative of the due process standard enunciated in *Gonzales Claudio*.

■ Appellants first contend that their pretrial detention for a total of more than nineteen months constitutes a *per se* violation of their due process rights. We reject their attempt to set a "bright line" limit for detention pending trial. As we noted in *Gonzales Claudio*, "the due process limit on the duration of preventive detention 'requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement.'" *Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir.1986) (quoting *United States v. Salerno*, 794 F.2d 64, 78–79 (2d Cir.1986) (Feinberg, Ch.J., dissenting on other grounds), *rev'd,* —— U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Despite the fact that the defendants in *Gonzales Claudio* had been detained for fourteen months at the time their appeal was argued, we determined that it was "more consonant with due process jurisprudence to consider factors in addition to passage of time." *Id.* While it may be true that we never before have sanctioned pretrial detention lasting nineteen months, it is equally true that we never have set an absolute limit on such detention, and we decline to do so now.

Appellants next contend that Judge Clarie misapplied the more liberal due process standard we articulated in *Gonzales Claudio* for evaluating the constitutionality of continued pretrial detention. In *Gonzales Claudio*, we identified three factors to be weighed in assessing whether a defendant's pretrial detention exceeds the "flexible standards of due process": "the length of detention that has occurred and the nonspeculative aspects of future detention, the extent to which the prosecution bears responsibility for the delay in starting the trial, and the facts concerning risk of flight." *Id.* at 343. Therefore, we turn to an analysis of these three factors.

■ As to the duration of confinement, we note that appellants have been detained continuously for more than nineteen months. Appellants' trial originally was scheduled to begin in March, and estimates given at oral argument indicate that their trial may not begin until September 1987, which would add approximately five months to their total pretrial confinement. In addition, it is estimated that their trial will last approximately eight months. *See id.* at 341. Given the length of pretrial confinement and the non-speculative aspects of future confinement, this factor weighs in appellants' favor.

Turning to the extent to which the prosecution bears responsibility for delay, we note that this inquiry involves purely factual determinations, and we will review the district court's findings under the clearly erroneous standard. *See Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982); *see also Shakur,* 817 F.2d at 195–97; *cf. Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) (finding of intentional discrimination reviewed under clearly erroneous standard). The district court made extensive findings of fact that, in effect, largely absolved the prosecution from responsibility for the delay in bringing appellants to trial. Judge Clarie specifically found, *inter alia,* that the prosecution had completed its translation of seized docu-

ments in a timely manner and that the defense was responsible for the delay in translating documents, that the need to translate documents and surveillance tapes arose independently of the prosecution's opposition to transferring the case to Puerto Rico, and that the defense's, rather than the prosecution's, efforts to obtain multiple translations of surveillance tapes had contributed significantly to the delay.

There is strong support for Judge Clarie's findings in the record. Because these additional findings of fact were not available to us in *Gonzales Claudio,* we held that the prosecution bore "a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." *Gonzales Claudio,* 806 F.2d at 342–43. The district court, believing itself bound by our decision in *Gonzales Claudio,* did not consider these additional factual findings in making its determination.[1] However, assisted by the additional findings supplied by the district court, we have determined that the prosecution is not responsible for a significant portion of the delay in bringing appellants to trial, and we therefore conclude that this factor weighs in favor of a finding that appellants' due process rights are not violated by their continued pretrial detention.

1. The district court declined to accord its factual findings any weight because it concluded that the law of the case doctrine barred reconsideration of findings of fact made in *Gonzales Claudio.* The law of the case doctrine posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). However, the law of the case doctrine "directs a court's discretion, it does not limit the tribunal's power." *Id.* We previously have noted that "[t]he doctrine of the law of the case is not an inviolate rule in this Circuit," *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982), and that the doctrine merely expresses the general practice of refusing to reopen what has been decided. *Id.* In regard to prior decisions of a circuit court, "one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in

the same case." *Kimball v. Callahan,* 590 F.2d 768, 771 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). However, reconsideration may be justified if the following grounds are present: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 790 (1981).

In the present appeal, although the district court did not rely on its findings of fact, it did provide us with additional evidence sufficient to warrant review of our prior determination. As we noted in *Gonzales Claudio,* a determination of the prosecution's responsibility for delay in starting a trial "is a matter on which we would want specific findings" by the district court. *Gonzales Claudio,* 806 F.2d at 341. Because additional, specific findings now are available to us, reconsideration of the government's responsibility for delay clearly is justified.

We turn now to an examination of the final factor: risk of flight. In reviewing a district court's order granting or denying bail, we consistently have applied the clearly erroneous standard of review to the district court's factual findings regarding both risk of flight and conditions of release. *Gonzales Claudio*, 806 F.2d at 338; *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir.1986). The clearly erroneous standard applies as well to the district court's ultimate finding as to a defendant's propensity to flee, based on its predicate findings of fact. *Gonzales Claudio*, 806 F.2d at 343; *see Shakur*, 817 F.2d at 195. However, in assessing this factor in *Gonzales Claudio*, we noted that we "are entitled to apply a broader standard of review in determining the extent to which the facts regarding risk of flight ... have significance on the constitutional issue of whether continued detention violates due process limitations." *Gonzales Claudio*, 806 F.2d at 343. We accepted the district court's findings of underlying historical facts and its ultimate factual determination of risk of flight. We concluded, however, that the district court had misconstrued the appropriate legal standard for determining risk of flight with regard to a due process challenge by giving insufficient weight to evidence of strong community ties and to the absence of any evidence that the defendants in *Gonzales Claudio* had ever fled from lawful authority or failed to honor court orders. *Id.* We noted that the district court had relied *primarily* on the nature of the crimes charged and the defendants' participation in them. However, we did not preclude consideration of such evidence when evaluated in conjunction with evidence regarding community ties and propensity to flee. Guided by our decision in *Gonzales Claudio*, the district court specifically found that both appellants had a record of prior flight and did not have strong ties to the community. In addition, the court noted that both appellants were charged as planners and organizers of the alleged conspiracy and robbery.

Because the district court adopted and correctly applied the precise legal standard we articulated in *Gonzales Claudio*, we will review the district court's determination under the clearly erroneous standard. *See Inwood Laboratories*, 456 U.S. at 855 n. 15, 102 S.Ct. at 2189 n. 15. We find nothing clearly erroneous in the district court's determination that Ojeda Rios and Segarra Palmer present risks of flight. Ojeda Rios previously had resisted arrest, and when FBI agents attempted to arrest him in connection with the Wells Fargo robbery, he fired three shots, wounding an agent. In addition, the district court found that he had lived "underground" for ten years, working full-time as a member of *Los Macheteros*, without strong ties to his community. As to Segarra Palmer, the district court found that he had been aware of his impending arrest, and was offered a "safehouse" by *Los Macheteros*. Instead, he fled to Mexico, accompanied by his wife and children, with false identification in his possession. In addition, although Segarra Palmer had strong family ties, the district court determined that he did not have strong community ties.

Although appellants raise numerous objections to the district court's analysis of the evidence regarding their propensity to flee, the district court was in the best position to evaluate the evidence presented. We therefore accept the district court's determination that appellants present risks of flight under the *Gonzales Claudio* standard, and we conclude that the risk of flight factor strongly favors a conclusion that appellants' due process rights are not violated by continued detention.

Although the duration of appellants' pretrial confinement weighs in their favor, the prosecution's lack of significant responsibility for pretrial delay and appellant's propensity to flee even under the stricter legal standard of *Gonzales Claudio* strongly weigh in favor of a finding that appellants' due process rights have not been violated. We conclude, therefore, that appellants' continued pretrial detention does not violate their due process rights.

## CONCLUSION

Because the prosecution does not bear the responsibility for any significant delay

in bringing appellants to trial and because appellants present a risk of flight under the standard enunciated in *Gonzales Claudio*, we affirm the orders of the district court denying appellants' motions for conditional release. We have examined appellants' other claims and find them to be without merit.