UNITED STATES of America, Plaintiff,

v.

Manuel Antonio NORIEGA, et al., Defendants.

No. 88–0079–CR.

United States District Court, S.D. Florida.

Oct. 9, 1990.

Michael P. Sullivan, Myles H. Malman, Guy Lewis, Asst. U.S. Attys., Miami, Fla., for plaintiff.

Frank A. Rubino, Coconut Grove, Fla., Jon May, Steven Kollin, Leon E. Tozo, Miami, Fla., for defendant Noriega.

Samuel I. Burstyn, Miami, Fla., for defendant Del Cid.

Steven E. Kreisberg, Coconut Grove, Fla., for defendant Saldarriaga.

Richard Sharpstein, Coconut Grove, Fla., for defendant Davidow.

## ORDER DENYING DEFENDANTS' MOTIONS FOR SEVERANCE

HOEVELER, District Judge.

THIS CAUSE is before the Court on the severance motions of codefendants Manuel Antonio Noriega, Luis Del Cid, Brian Davidow, and William Saldarriaga.

The defendants are named in a twelve-count indictment charging them with various narcotics-related offenses. Defendants Noriega and Del Cid are jointly charged in four counts: conspiracy to commit racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count I); substantive racketeering offenses, in violation of RICO, 18 U.S.C. § 1962(c) (Count II); conspiracy to distribute and import cocaine into the United States, in violation of 21 U.S.C. § 963 (Count III); and distribution and aiding and abetting the distribution of cocaine, intending that it be imported into the United States, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2 (Count V). In addition, Noriega is also charged with numerous other offenses in all but one of the remaining counts of the indictment. Defendants Davidow and Saldarriaga are charged with conspiring to distribute and import over 322 kilograms of cocaine into the United States, in violation of 21 U.S.C. § 963 (Count IX), and distributing and aiding and abetting the distribution of the same, in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2 (Count X). Davidow is also named in the RICO conspiracy count.

Del Cid, Davidow, and Saldarriaga all move to have their trials severed from that of Noriega on various grounds. First, Noriega's codefendants maintain that a joint trial with Noriega will create prejudicial "spillover effects" of two varieties: dispari-

ty in evidence and prejudicial pretrial publicity. Arguing that their roles in the enumerated counts are relatively minor compared to Noriega's involvement, Noriega's codefendants claim prejudice from the amount of evidence likely to be introduced against Noriega but not directly related to or admissible as to them. Noriega's codefendants also argue that the enormous amount of negative media publicity heaped on Noriega will spill over onto them, creating guilt by association. Second, Defendants Del Cid and Davidow move for severance on the additional ground that their defenses will conflict with Noriega's anticipated defense of entrapment. Third, Defendants Davidow and Saldarriaga assert their statutory right to a speedy trial as a basis for severance, arguing that this right is infringed as long as their cases remain tied to Noriega's and are subject to the delays attributable to Noriega's participation.

In addition to their motions for severance from Noriega, Del Cid, Davidow, and Saldarriaga also seek severance from each other and the remaining codefendants due to alleged disparities in evidence. Finally, Noriega moves for severance from another codefendant, Daniel Miranda, on the basis of antagonistic defenses.

Because the Court finds that the defendants have failed to establish compelling prejudice sufficient to outweigh the public interest in a joint trial, the motions are denied.

## I. DISCUSSION

We begin with the general rule that defendants jointly indicted should be jointly tried, particularly in conspiracy cases, where charges against two or more defendants may be proved on substantially the same set of facts and evidence. *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir.1989); *United States v. Gossett*, 877 F.2d 901, 904 (11th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1141, 107 L.Ed.2d 1045 (1990); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985); *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir.1983), *cert. denied*, 465 U.S. 1108, 104 S.Ct. 1614,

80 L.Ed.2d 143 (1984). The preference for joint trials is dictated by considerations of judicial economy, conservation of public resources, inconvenience to the government of prosecuting separately defendants who are properly joined for trial, and the need for efficient administration of justice. *Walker*, 720 F.2d at 1533, n. 9 (citing *Parker v. United States*, 404 F.2d 1193 (9th Cir.1968), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969)). The decision to sever is left to the sound discretion of the court. *United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); *United States v. Caporale*, 806 F.2d 1487, 1509 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *United States v. Rivera*, 775 F.2d 1559, 1564 (11th Cir.1985), *cert. denied*, 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986). However, severance is warranted only where a defendant demonstrates that a joint trial will result in "specific and compelling prejudice" to the conduct of his defense. *Alvarez*, 755 F.2d at 857; *Walker*, 720 F.2d at 1533; *United States v. Zielie*, 734 F.2d 1447, 1464 (11th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). The fact that a defendant may suffer some prejudice is not enough to justify severance, as a certain degree of prejudice is always inherent in multi-defendant trials. *Alvarez, supra; Walker, supra; United States v. Varella*, 692 F.2d 1352, 1360 (11th Cir. 1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1392 (1983); *United States v. Zicree*, 605 F.2d 1381, 1388–89 (5th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). With these principles in mind, the Court now turns to the several arguments advanced by the moving defendants.

### A. Spillover Effects

#### 1. Disparity in Evidence

Del Cid, Davidow, and Saldarriaga all argue that they are comparatively minor figures in the indictment and that a substantial amount of the evidence introduced by the government at trial will concern

defendants other than themselves—particularly Noriega, said to be the principal defendant. The quantity of evidence admissible as to Noriega and others but only indirectly related to or otherwise inadmissible as to them, defendants argue, will spill over onto them and result in convictions based largely on proof unconnected to the specific acts with which they are charged.

As indication of the prejudice likely to occur, defendants point to the breadth and gravity of the charges contained in the two RICO counts, which combined account for 23 pages of the 30–page indictment. The RICO conspiracy count spans five years and covers eleven racketeering acts. As argued by Saldarriaga:

> This count is not only physically ponderous, but is extremely far-reaching in both a substantive, temporal and geographic sense as well. Its alleged participants include high ranking members of the government of Panama, including military chief Manuel Antonio Noriega, as well as an alleged leader of the so-called and notorious "Medellin Cartel" ... among others. The count alleges a grand scheme whereby General Noriega, and hence the government of Panama, allegedly provided protection for cocaine shipments, secure airstrips in Panama, precursor chemicals used in the manufacture of cocaine, permission to establish a cocaine laboratory in Panama, protection from Columbian law enforcement authorities, and safe passage for narcotics proceeds. It further alleges forty-five distinct overt acts to have been committed in furtherance of the alleged racketeering conspiracy, over an extended period of time of some three and a half years ...[1]

It is submitted that the RICO counts will entail evidence of ties between Noriega and the Medellin Cartel, Cuban president Fidel Castro, and the Nicaraguan Sandanistas, as well as ties to the Iran–Contra scheme; evidence concerning the manufacture, importation, and distribution of cocaine over several years; graphic photos and descriptions of huge quantities of drugs; evidence of political corruption at the highest levels of the Panamanian government; and evidence of vast wealth and international money laundering.[2]

Saldarriaga is not charged in either of the RICO counts and thus much of the evidence relevant to these counts will be inadmissible as to him. The charges against Saldarriaga (Counts IX and X) are based on a single alleged distribution of, and conspiracy to distribute, approximately 322 kilograms of cocaine aboard a vessel which was subsequently seized by Columbian officials. The charges against Davidow are also based on the same incident, but Davidow, unlike Saldarriaga, is named in the RICO conspiracy count. Davidow nevertheless seeks to minimize his involvement in the conspiracy, pointing to the fact that his only alleged participation consists of the single unsuccessful smuggling venture, which occurred at the tail end of the five-year conspiracy. Thus, while the evidence as to the RICO conspiracy may well be admissible against him, a substantial portion will have no direct bearing on his limited role. In addition, much of the evidence relevant to the substantive RICO offense will be inadmissible against Davidow, since he is not charged under that count. Del Cid is named in both RICO counts but nonetheless argues that his alleged role is vastly less significant than Noriega's.

As to this last claim, Del Cid's role, while less extensive than Noriega's, can hardly be characterized as that of a peripheral player on the outer limits of the racketeering and conspiracy offenses. The indictment alleges that Del Cid served as liaison, courier, and emissary for Noriega in his transactions with international drug traffickers, including members of the Medellin Cartel, and that Del Cid at various times arranged for the transportation of payments to Noriega from the traffickers. Moreover, Del Cid and Noriega are charged together in four separate counts, two of which allege conspiracies. A separate trial for Del Cid would therefore require sub-

---

**1.** *Saldarriaga's Motion for Severance,* November 30, 1989, p. 2.

**2.** *Davidow's Motion for Severance,* February 7, 1990, p. 11.

stantial duplication of evidence; in each trial, the prosecution would have to establish the existence of the same RICO enterprise, the same overt acts, the same conspiracies, and the same substantive offenses with which both Del Cid and Noriega are charged. *See United States v. Morales*, 868 F.2d at 1572 ("[I]t is significant that if the appellants had been tried separately it would have resulted in extensive duplication of evidence."); *United States v. Casamayor*, 837 F.2d 1509, 1512 (11th Cir. 1988), *cert. denied*, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). Some amount of duplication would also occur if Davidow and Saldarriaga were granted separate trials, since Noriega is named as a codefendant in Counts IX and X, in which both Davidow and Saldarriaga are charged. Additionally, Davidow is named as a RICO conspirator and thus much or all of the evidence going to the massive RICO conspiracy count would have to be duplicated if Davidow were severed. As the alleged distribution of cocaine by Saldarriaga and Davidow is listed as one of the forty-five overt acts in furtherance of the conspiracy, the duplication problem is manifest.

 Were defendants to make out a colorable claim of compelling prejudice, severance would be justified despite this duplication of evidence and consequent expenditure of public resources. However, it is well settled that such prejudice is not established simply because a defendant is a minor figure and much of the evidence at trial applies only to his codefendants. *Casamayor*, 837 F.2d at 1511; *Zielie*, 734 F.2d at 1463–64; *Alvarez, supra; Walker*, 720 F.2d at 1533–34; *United States v. Cresta*, 825 F.2d 538, 554–55 (1st Cir.1987), *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988); *United States v. Pinto*, 838 F.2d 426, 434 (10th Cir.1988); *Cf. Leavitt*, 878 F.2d at 1340 ("[T]he fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance."). The possibility that evidence admissible against some codefend-

ants is inapplicable or indirectly related to others is a feature of all joint trials, and the rule favoring joinder is not subject to any requirement that the quantum of evidence as to each defendant's culpability be equal. *United States v. Jackson*, 549 F.2d 517, 525–26 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). "It is indeed hard to imagine a multiple defendant case in which the evidence against individual defendants is either quantitatively or qualitatively equivalent." *Id.* at 525. Thus, where disparity of evidence is the basis for a severance motion, severance is warranted "only in the most extreme cases and only where the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *United States v. Bolts*, 558 F.2d 316, 322–23 (5th Cir.), *cert. denied*, 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977). The ultimate issue is whether the jury will be able to compartmentalize and independently appraise the evidence as to each defendant. *Leavitt, supra; Varella*, 692 F.2d at 1360; *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir.1987), *cert. denied*, 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). While defendants argue that the jury will be unable to perform this task, it is presumed that cautionary instructions from the court will minimize the possibility of spillover effects,[3] and the circumstances of this case do not suggest otherwise. Though the pretrial motions have involved several complex issues and discovery is voluminous, the case itself, encompassing twelve counts and seven defendants, is not so complicated and unmanageable as to make it impossible to distinguish among the defendants and the evidence offered as to each defendant's own acts, statements, and conduct. *See Varella*, 692 F.2d at 1361. The charges against Davidow and Saldarriaga in particular are based on one specific and discrete incident of attempted smuggling of cocaine aboard a vessel. By contrast, most of the other charges in the indictment concern Noriega's alleged use of Panama as a ha-

---

3. *Leavitt, supra; United States v. Badia*, 827 F.2d 1458, 1466–67 (11th Cir.1987), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988); *United States v. Meester*, 762 F.2d 867, 884 (11th Cir.) ("An instruction that the jury should con-

sider the case against each defendant separately limits the likelihood of a 'spill-over' effect."), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985).

ven for international drug trafficking and money laundering. As the single smuggling incident attributed to Davidow and Saldarriaga is conceptually distinct from the more far-reaching allegations concerning Panama's use as a base of narcotics operations, the jury should be able to separate the evidence of Davidow and Saldarriaga's activities from the evidence against Noriega and other codefendants with appropriate instructions from the court. "Marked differences among defendants have been noted to be a source of *reduced* danger of spillover." *United States v. Abrams,* 539 F.Supp. 378, 382 (S.D.N.Y. 1982) (emphasis in original) (citing *United States v. Papadakis,* 510 F.2d 287, 300 (2nd Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975)).[4] There is no reason to believe that the jury will be unable to distinguish evidence of an attempted smuggling of cocaine aboard a boat from evidence of, for example, Noriega's alleged protection of a cocaine laboratory, provision of secure airstrips in Panama, protection of cocaine shipments, assurance of the safe passage and laundering of narcotics proceeds in Panamanian banks, and receipt of payments from Cartel members for the above activities. Nor is there any reason to believe at this point that the jury will be unable to follow cautionary instructions from the court delineating what evidence may and may not be considered against Del Cid. The Court is, of course, mindful of the importance of such instructions and will give due consideration to the suggestions of defense counsel on this matter. Accordingly, severance is not warranted on this basis.

### 2. Pretrial Publicity

As an additional ground for severance, Noriega's codefendants point to the excessive and inflammatory media publicity surrounding Noriega, which defendants contend will result in guilt by association if they are not severed from Noriega. One of Noriega's codefendants has likened his presence to that of an "atomic bomb producing fallout which would kill anyone tried with him."[5] Noriega's codefendants

---

**4.** For this reason, the cases cited by the defendants are inapposite. Saldarriaga cites in particular *United States v. Winter* in support of his claim of prejudice from the joinder of the RICO conspiracy count. In *Winter,* the First Circuit reversed the convictions of two defendants on two substantive counts involving the 'fixing' of one horse race because they had been jointly tried with other defendants charged under a RICO conspiracy count involving the fixing of several races. The court reasoned that the jury would be unable to separate the evidence of the one race in which the two defendants were involved from the evidence of the numerous other fixed races in which they were not implicated. 663 F.2d 1120, 1138–39 (1st Cir.1981), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). Thus, unlike the instant case, the nature of the activities committed by the defendants not charged under the RICO conspiracy count was virtually indistinguishable from the actions committed by the RICO conspirators.

Similarly inapposite is *United States v. McLain,* 823 F.2d 1457 (11th Cir.1987). There the defendants were joined under a RICO count containing two separate conspiracies, one drug-related and the other involving loansharking and bookmaking. Although one of the defendants in the RICO count had absolutely no connection to the drug conspiracy and in fact was unaware of its existence, the jury was "deluged" with testimony concerning the violent and murderous actions of the narcotics conspirators.

*Id.* at 1467. Against this background, the Eleventh Circuit ruled that the loansharking and bookmaking counts against the defendant should have been severed from the drug counts. *Id.* As is apparent from the facts in *McLain,* the prejudice in that case arose from the joinder of two separate and unrelated conspiracies under a single count, one of which had no application to a defendant charged under that count and which further entailed evidence of violent activity. This situation is not presented in the case at bar.

**5.** *Davidow's Motion for Severance,* p. 6.
 As characterized by Saldarriaga:
 This [pretrial publicity] has included comments as to the co-defendant Noriega's childhood, personal background, supposed psychological make-up, ascension to dictatorial power, alleged drug usage, corruption, unfathomable wealth, criminal involvement, adulterous proclivities, eccentric sexual predilections and ritualistic voodoo religious practices. These publicized comments come from no less than the President of the United States who, widely reported, has referred to [Noriega] as a 'thug', a 'narcoterrorist', and a 'poisoner of our children'.
 ... The media skewerings that have sought to place Noriega in line with such illustrious personages as Ivan the Terrible, Atilla the Hun, and Jack the Ripper, have variously portrayed him in such pejorative terms as a 'devil', with an entourage of 'Brazilian

further submit that the Cuban population in Miami is particularly predisposed to a harsh judgement of Noriega, and thus his codefendants, given Noriega's reported ties to Fidel Castro.

Although it is noted that the media has more recently portrayed Noriega in more sympathetic terms while focusing its criticism on the actions of the United States government in bringing Noriega to trial, the Court does not dispute the defendants' characterizations of the initial publicity surrounding Noriega. Nonetheless, it would be premature and speculative to conclude at this point, without the benefit of a voir dire examination of prospective jurors, that the publicity surrounding Noriega is so prejudicial and widespread that a fair and impartial jury cannot be seated in this case. That determination must necessarily await the voir dire. *See United States v. Mandel,* 415 F.Supp. 1033, 1052–53 (D.C.Md. 1976); *United States v. Addonizio,* 313 F.Supp. 486, 493–94, 498 (D.N.J.1970), *aff'd,* 451 F.2d 49 (3rd Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). If it then appeared that an unbiased jury from this area could not be seated, the proper remedy would not be severance but a change of venue. *United States v. Thevis,* 474 F.Supp. 117, 132 (N.D. Ga.1979), *aff'd,* 665 F.2d 616 (5th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *Dennis v. United States,* 302 F.2d 5, 8 (10th Cir.1962), *rev'd on other grounds,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). It would hardly make sense to conclude that Noriega's codefendants must be severed if prospective jurors are unduly prejudiced against Noriega, since the net effect would be to leave Noriega facing a biased jury while his codefendants are sent off to better fates. If it indeed turns out that a careful voir dire is not enough to limit the prejudice flowing from pretrial publicity, then the answer lies in locating a venue in which *all* the defendants receive a fair trial.

Thus, while the pretrial publicity surrounding this case is without doubt an important issue, it is not one on which severance is justified.

### B. Antagonistic Defenses

Defendants Noriega, Del Cid, and Davidow all move for severance on the basis of antagonistic defenses. Neither defendant, however, establishes the level of conflict—or, in Noriega's case, the type of conflict—required before severance is justified on this ground.

The basis of Noriega's motion for severance from codefendant Daniel Miranda is a separate civil suit filed against Noriega by Miranda's attorney, Michael O'Kane, on behalf of two journalists injured during the course of the United States' military invasion of Panama. The suit claims that the journalists' injuries were a foreseeable result of the United States' military action in Panama, which in turn was a foreseeable result of Noriega's declaration of war against the United States. Accordingly, the plaintiffs seek to hold Noriega liable in tort for damages for his alleged negligence in prompting the United States to undertake a military invasion of Panama.[6] The Court is tempted to comment on the extremely limited life expectancy of such an imaginative yet insubstantial effort, but will not do so in this setting and because the dissection of such a claim will fall to another judge. Noriega's lawyers argue that this suit presents a conflict between Noriega and codefendant Miranda because they cannot mount an effective defense against the government's accusations "while being stabbed in the back by a codefendant's lawyer."[7]

Noriega's counsel point to other actions by Miranda's attorney which conflict with Noriega's position and further undermine cooperation between co-counsel. Among these actions are O'Kane's opposition to

witches'; a pornography enthusiast; 'one of the villains of the century: not only a drug kingpin but also an arms smuggler and a murderous tyrant'; a drug addict; and a sadistic and satanic torturer ...
*Saldarriaga's Second Motion for Severance,* February 8, 1990, pp. 7–8.

6. *Chauvel, et al. v. Manuel Antonio Noriega,* 90–1432–CIV–KEHOE (S.D.Fla.).

7. *Noriega's Motion to Sever,* June 28, 1990, p. 2.

in-chambers conferences where all parties are represented, his refusal to obtain a security clearance and concomitant request that Noriega's lawyers refrain from sharing classified information with him, and his suggestion, made in a pleading, that Noriega's lawyers violated the terms of their security clearances by travelling to Havana, Cuba to interview Fidel Castro. In light of the above, Noriega's lawyers have characterized O'Kane as a "loose cannon rolling on the deck," [8] whose actions have served to place them in an untenable position. Since they are unsure of O'Kane's future actions, Noriega's lawyers are reluctant to share trial strategy, results of investigations, and other information with O'Kane for fear that he will "double cross" them,[9] a situation which they maintain will result in a disjointed and ununified defense, enabling the prosecution to "merely stand back and pick up the pieces" of the defendants' infighting.[10]

■ Where severance is sought on the basis of antagonistic defenses, the conflict must go to the essence of the movant's defense, and the defenses must be so antagonistic as to be mutually exclusive or irreconcilable, i.e., the jury either cannot logically believe both defendants' theories of defense or cannot reasonably accommodate both. *Smith v. Kelso*, 863 F.2d 1564, 1571 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989); *United States v. Berkowitz*, 662 F.2d 1127, 1133–34 (5th Cir. Unit B 1981).

■ Under the first prong of the test for antagonistic defenses, conflicts which are merely collateral or subsidiary to the central issues do not warrant severance. *Smith v. Kelso*, 863 F.2d at 1570. It is clear from the grounds set forth in Noriega's motion that he has failed to meet this threshold requirement. The tort action against Noriega is completely unrelated to the instant indictment and, as such, does not go to the question of Noriega's guilt or innocence on the narcotics charges at issue in this case; whether Noriega is liable in tort for injuries inflicted on civilians by American troops has no

bearing on whether Noriega violated U.S. narcotics laws. Indeed, the civil suit makes no mention of Noriega's alleged narcotics activities, but, as indicated above, is premised on Noriega's declaration of war against the United States, which occurred more than one year after the grand jury indictment was returned in this case. Not only is the tort action unrelated to the instant charges against Noriega, but it also has no bearing on the charges against Miranda and, by implication, on his defense. It is therefore difficult to see how that action makes Miranda's defense inconsistent with any conceivable defense of Noriega's.

■ In the typical situation where the defenses are so antagonistic that they require severance, one defendant attempts to establish his innocence by placing the guilt on his codefendant, and the jury, in order to believe that the defendant is innocent, must necessarily believe that the codefendant is guilty. *See Berkowitz*, 662 F.2d at 1134; *United States v. Crawford*, 581 F.2d 489, 491–92 (5th Cir.1978); *United States v. Johnson*, 478 F.2d 1129 (5th Cir.1973). The situation in this case does not even remotely reach that level of antagonism. Miranda has not so far attempted to place blame on Noriega, nor even so much as suggested that Noriega was in any way involved in the narcotics activities with which he is charged. At bottom, Noriega's motion to sever is not directed against Miranda or any possible defense he may assert, but rather against the actions of Miranda's lawyer in a totally separate proceeding which involves neither the charges raised in this case nor any defenses which might arise thereto. As to O'Kane's actions on behalf of Miranda, such as his opposition to conferences in chambers (a matter which has been dealt with in a prior order) and failure to obtain a security clearance, it is again clear that these tactics do not constitute Miranda's defense and therefore do not make for "antagonistic defenses" between himself and Noriega. That Noriega's lawyers may be reluctant to

---

**8.** *Id.*

**9.** *Id.* at p. 3.

**10.** *Id.*

share information or trial strategy with Miranda's lawyer simply reflects the fact that tensions between codefendants and their lawyers are always possible when persons indicted together are tried together. *See Smith v. Kelso,* 863 F.2d at 1568. However, absent compelling and specific prejudice going to the core of the defenses to be presented at trial, this tension does not warrant severance. There is no requirement which entitles codefendants or their counsel to a smooth and cooperative relationship or unified defense strategy. In sum, Noriega has not made out a case of inconsistent defenses, much less established the level of antagonism required to compel severance.

▇▇ Defendants Del Cid and Davidow also assert antagonistic defenses as a basis for severance from Noriega. Del Cid and Davidow contend that Noriega's possible use of an entrapment or 'public authority' defense would prejudice their cases by implicitly admitting the underlying criminal conduct alleged.

This Circuit has repeatedly held that the mere use by one coconspirator of an entrapment defense not shared by another coconspirator does not alone warrant severance. The movant must still demonstrate that the alleged antagonistic defenses are mutually exclusive and irreconcilable. *United States v. Andrews,* 765 F.2d 1491, 1498 (11th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986); *United States v. Pirolli,* 742 F.2d 1382, 1386 (11th Cir.1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *United States v. Riola,* 694 F.2d 670, 672–73 (11th Cir.), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1532, 75 L.Ed.2d 953 (1983). *United States v. Morrow,* 537 F.2d 120, 138 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Neither defendant has made this showing. For example, assuming that Noriega employs an entrapment or similar defense at trial, the jury may logically believe both that Noriega's conduct was the result of entrapment, and that Del Cid and Davidow did not participate at all in the crimes attributed to them. *See Walker,* 720 F.2d at 1534 ("This circuit has long since established that entrapment defenses and simple

not guilty pleas are not mutually exclusive or irreconcilable per se."); *Pirolli,* 742 F.2d at 1386 (entrapment defense was not antagonistic to or inconsistent with the 'merely present' theory advanced by codefendants where defendant asserting entrapment did not implicate codefendants). Thus, there is no reason to conclude at this early stage of the proceedings that the defenses presented at trial will be irreconcilable or even inconsistent.

C. Speedy Trial

Finally, Defendants Davidow and Saldarriaga contend that their statutory right to a speedy trial is impaired as long as they are joined with Noriega and are subject to the delays occasioned by his presence in the case. Despite earlier waivers of his speedy trial rights, Davidow has sought trial since March, 1989. Saldarriaga has consistently and repeatedly moved for severance and an immediate trial since his arrest on October 1, 1989.

The Speedy Trial Act requires that a defendant be tried within 70 days of the filing of the information or indictment, or of the date the defendant first appeared before a judicial officer of the court, whichever occurs later. 18 U.S.C. § 3161(c)(1). This seventy-day period, however, is subject to certain exclusions of time, including the delay attributable to the defendant's filing of pretrial motions, 18 U.S.C. § 3161(h)(1)(F), and the period of delay resulting from an "ends of justice" continuance pursuant to § 3161(h)(8)(A). Section 3161(h)(8)(A) excludes from computation of the seventy-day period:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

▇▇ Also excludable from Speedy Trial calculation is "[a] reasonable period of de-

lay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). The effect of § 3161(h)(7) is that a delay attributable to one defendant is excludable not only as to him but also to his codefendants. Hence, whatever stops the Speedy Trial clock for one defendant stops the clock for all codefendants, subject, however, to the requirement that the delay be reasonable. *United States v. Campbell,* 706 F.2d 1138, 1142 (11th Cir. 1983); *United States v. Struyf,* 701 F.2d 875, 878 (11th Cir.1983); *United States v. Stafford,* 697 F.2d 1368, 1372 (11th Cir. 1983); *United States v. Tobin,* 840 F.2d 867, 869 (11th Cir.1988) (noting the reasonableness requirement in § 3161(h)(7)); *United States v. Darby,* 744 F.2d 1508, 1517 (11th Cir.1984) (same), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); *United States v. Davis,* 679 F.2d 845, 850 (11th Cir.1982) (same), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983).

In *United States v. Varella,* the Eleventh Circuit dealt exhaustively with the legislative history and purpose behind § 3161(h)(7):

> The primary purpose of the Speedy Trial Act is to accelerate criminal trials. Congress recognized the utility of multi-defendant trials to effectuate the prompt efficient disposition of criminal justice. It felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of time. *Proposed Amendments to the Ervin Bill: Hearings on S. 895,* 92nd Cong., 1st Sess. (1971) (letter to Senator Ervin from Assistant Attorney General William H. Rehnquist). Congress feared that rigid statutory time limits would force courts to disregard the principle of "judicial efficiency;" courts would be forced to "grant severances unnecessarily in multi-defendant cases 'so that a defendant whose case was moving slowly would not hold up the trial of his codefendants.'" S.Rep. No. 93–1021, 93rd Cong., 2d Sess. (1974). "In multiple de-

fendant cases, such as major narcotic conspiracies, judges may be forced to grant severances which would otherwise not be required. This in turn would lead to more trials and more congestion." *Hearings on the 1972 Senate Subcommittee Bill, S. 754,* 93rd Cong., 1st Sess. (1972) (Testimony of Deputy Attorney General Joseph T. Sneed). Thus, reasonable delay in multi-defendant cases was specifically provided for by 18 U.S.C. § 3161(h)(7). Congress stressed that "the purpose of the provision is to make sure that [the Speedy Trial Act] does not alter the present rules of severance of codefendants by forcing the [g]overnment to prosecute the first defendant separately or be subject to a speedy trial dismissal under section 3162."

692 F.2d at 1359.

Turning to the facts of this case, the Court, by separate order, granted an "ends of justice" continuance of the trial to January 28, 1990. The continuance was sought by Defendant Noriega, who requested an even greater extension of the trial date than that finally set by the Court. Pursuant to §§ 3161(h)(8)(A) and 3161(h)(8)(B)(ii), the Court entered its finding that this case is both unusual and complex and accordingly warranted a continuance. Specifically, the Court found that this case involved several novel issues due to the presence of Noriega, the former leader of Panama, and that discovery would be both complicated and extensive, covering thousands of documents, many of which are sensitive or classified and therefore subject to elaborate security measures as well as the time-consuming procedures set forth in the Classified Information Procedures Act ("CIPA"), 18 U.S.C.App. §§ 1–16. Applying the language of § 3161(h)(7) and guided by the Eleventh Circuit's extensive discussion of the purpose of that provision in *Varella,* the Court extended the excludable period of time reflected in the continuance to all of Noriega's codefendants.[11]

 As noted above, § 3161(h)(7) specifically provides that only a *reasonable* period of delay caused by one defendant is

11. *Order of Continuance,* May 4, 1990.

excludable as to his codefendants. Reasonableness may be determined either by reference to the reasons for delay and whether the amount of delay is justified in light of those reasons, or in terms of prejudice caused to a defendant when his trial is delayed through no fault of his own. *See Darby,* 744 F.2d at 1518–19; *Tobin,* 840 F.2d at 870. Davidow and Saldarriaga do not contend that the delay in this case is unnecessary to dispose of pretrial motions and complete discovery, but argue only that they are prejudiced by the extension of their trial date, for which they and their counsel are in no way responsible. Except for Davidow's adoption of Noriega's first motion to dismiss the indictment, filed before Noriega was arrested and brought to the United States,[12] Davidow and Saldarriaga have not joined in the omnibus jurisdictional issues raised by Noriega or in the pretrial motions filed by other codefendants. Indeed, they have filed very few motions of their own with the exception of their motions to sever. They are not involved in the extensive CIPA-related discovery and procedures, which account for a substantial portion of the pretrial preparation. Nor are they responsible for the delays caused by Noriega's efforts to gain access to funds needed to finance his defense—efforts which have prevented Noriega from proceeding on several aspects of his pretrial preparation and which, defendants contend, threaten to further postpone the January trial date.

In *Barker v. Wingo,* the Supreme Court identified three types of prejudice that may result from delay: prolonged pretrial incarceration, the anxiety inherent in awaiting trial, and impairment of the defense. 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). *Barker v. Wingo* involved the constitutional right to a speedy trial, but the prejudice factors identified by the Court also apply when the statutory right to a speedy trial is at issue. *See Tobin,* 840 F.2d at 870 (delay pursuant to § 3161(h)(7) of the Speedy Trial Act did not prejudice defendant in terms of his ability to defend himself); *Davis,* 679 F.2d at 850 (same); *Darby,* 744 F.2d at 1519 (delay pursuant to § 3161(h)(7) did not impair defendant's defense at trial, and any prejudice caused by extended incarceration was insufficient to render period of delay unreasonable).

Applying these factors to Davidow's speedy trial claim, the Court cannot say that Davidow has suffered undue prejudice. The anxiety of awaiting trial is, standing alone, insufficient to warrant severance. *Varella,* 692 F.2d at 1359. Davidow does not claim that the delay is so lengthy that his defense will be impaired through, for example, loss of witness memory or lost evidence. He states that a lengthy trial with Noriega would pose a financial hardship, but this hardship is outweighed by the need to avoid unnecessary and costly duplication of public expenditures and resources that a separate trial would entail. Most important, Davidow has been free on bond since almost immediately after his arrest and has therefore suffered no lengthy incarceration. *See United States v. Mobile Materials, Inc.,* 871 F.2d 902, 917 (10th Cir.) (noting that courts have excluded *extended periods of delay* when all defendants are out on bond) (emphasis in original), *modified on other grounds,* 881 F.2d 866 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). The Court also cannot ignore the fact that Davidow's position on continuance has been selective and inconsistent. In another case in which he is a defendant, and which has been pending for the same amount of time as the case at bar, Davidow has frequently sought a continuance of his trial. His active solicitation of delay in that case can only cast doubt on his claim to suffer from a delay here. In the absence of a more specific and compelling prejudice, particularly the prejudice flowing from prolonged pretrial incarceration, a severance of Davidow would frustrate the purpose of § 3161(h)(7) since the only criterion on which it would rest is the mere passage of time. The Court therefore finds that the excludable period of time resulting from the continuance is reasonable as applied to Davidow.

12. *See United States v. Noriega,* 683 F.Supp. 1373 (S.D.Fla.1988).

More troubling to the Court is Saldarriaga's position. Saldarriaga has been incarcerated with no opportunity to make bond since his arrest on October 1, 1989. If Saldarriaga is not severed from Noriega or released on bond, he will therefore have been incarcerated for approximately sixteen months prior to trial.

■ Title 18 U.S.C. Section 3164 specifically provides that priority be given to a case in which a defendant is detained, and further requires that the trial of such defendant occur with 90 days of his detention. That section also, however, excludes from computation of the ninety-day time limit the periods of delay enumerated in § 3161(h).[13] Thus, the rule that delays attributable to one defendant are excludable as to all codefendants applies to detainees as well. *See United States v. Theron*, 782 F.2d 1510, 1515–16 (10th Cir.1986); *United States v. Accetturo*, 783 F.2d 382, 395 (3rd Cir.1986) (Sloviter, concurring in part); *United States v. Mendoza*, 663 F.Supp. 1043, 1046 (D.N.J.1987). Nonetheless, it has been suggested that the Speedy Trial Act is an imperfect regulator of the length of delay as applied to incarcerated defendants, and that the "reasonable delay" exclusion of § 3161(h)(7) therefore has a different meaning and application under § 3164 than under § 3161: "What might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit might become unreasonable when a defendant's incarceration is indefinitely prolonged beyond ninety days without an opportunity to make bail." *Mendoza*, 663 F.Supp. at 1047 (citing *Theron*, 782 F.2d at 1516). To hold otherwise might render the protections of § 3164 illusory by allowing § 3161(h)'s excludable delays to transform pretrial detention into a punitive measure which loses sight of the priority to which incarcerated defendants are entitled.

■ In grafting the § 3161(h) exclusions onto § 3164, Congress clearly contemplated some extension beyond the ninety-day limit for detainees. At some point, however, extended pretrial incarceration raises due process concerns, which can be avoided only if the 'reasonableness' limitation of § 3161(h)(7) is given particular force in cases of substantially prolonged pretrial detention. *See Theron*, 782 F.2d at 1516 ("If we did not construe the statute to require release or trial sooner than the date the trial court has set, [the defendant's] continued detention would present serious constitutional questions."); *Mendoza, supra* ("[T]he Speedy Trial Act was not designed to relieve the due process concerns implicated by prolonged pre-trial detention.") (citing *Accetturo*, 783 F.2d at 394); *United States v. Colombo*, 777 F.2d 96, 101 (2nd Cir.1985) (recognizing that application of the Speedy Trial Act's excludable delays to defendants incarcerated for a lengthy period might not survive a due process challenge); *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2nd Cir.1986) (recognizing that at some point, continued pretrial incarceration raises a constitutional issue); *United States v. Portes*, 786 F.2d 758, 768 (7th Cir.1985) (same); *Accetturo*, 783 F.2d at 388 (same). This is especially so where the defendant, like Saldarriaga, has at all time sought immediate trial, has continually moved for severance, and has taken no steps to delay his trial. *See Theron, supra.*

■ If the defendant's lack of responsibility for the delay was the only factor meriting attention, the Court would have no hesitancy in concluding that Saldarriaga must be severed and immediately tried or released on bond. But in determining what constitutes a "reasonable delay" for an incarcerated defendant, or at what point continued detention threatens to violate due process, the Court must consider *all* rele-

---

**13.** Section 3164 provides in relevant part:
(a) The trial or other disposition of cases involving (1) a detained person who is being held in detention solely because he is awaiting trial, ... shall be accorded priority.
(b) The trial of any person described in subsection (a)(1) ... of this section shall commence not later than ninety days following the beginning of such continuous detention ... The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.

vant circumstances. There is no bright-line rule here; each case must be assessed on its own particular facts. *Accetturo, supra; Gonzales Claudio*, 806 F.2d at 340; *United States v. Hare*, 873 F.2d 796, 801 (5th Cir.1989); *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir.1988); *United States v. Melendez–Carrion*, 820 F.2d 56, 59 (2nd Cir.1987). Thus, in addition to the length of incarceration and other factors such as the government's responsibility for the delay and the complexity of the case, the Court must also revisit the factors relevant to the initial detention determination, including the seriousness of the charges and the strength of the government's proof that the defendant poses a flight risk or a danger to the community.[14]

■ As was stated above, the continuance of this case was based on the complexity of the pretrial issues and the voluminous and sensitive nature of discovery. It is further noted that government has not been responsible for the delay; the continuance was sought by Noriega and almost all of the pretrial motions have been filed by the codefendants. Turning to the factors relevant to detention, what stands out most strikingly is the serious nature of the charges against Saldarriaga. He is charged with conspiracy to import, and distribution of, approximately 322 kilograms of cocaine. While Saldarriaga might appear to be a minor defendant when measured against his codefendants, his alleged crime is, standing alone, of undoubted severity and, if proved true, would warrant a substantial sentence. Moreover, Saldarriaga has been adjudged a flight risk and there appear to be no conditions or combination of conditions which would reasonably assure his appearance at trial if he were released on bond. He is a citizen of Columbia, with strong ties to that country and no substantial ties to this community. Further, he is an in-law of the powerful Ochoa family, a member of the Medellin Cartel. He would therefore almost certainly flee to Columbia upon his release rather than face serious charges and a trial with Noriega. While recognizing that Saldarriaga's pretrial incarceration has been of substantial length, the Court cannot order the release of a defendant facing such grave charges when the likely result would be to remove him from prosecution altogether.[15]

■ As for severance and an immediate trial, the Government has made it clear to the Court that some of its witnesses against Saldarriaga will also be testifying against Noriega and top members of the Medellin Cartel, and that early disclosure of their identities would place their lives and the lives of their family members in immediate jeopardy. The Court has already entered an order, pursuant to a motion by Saldarriaga, requiring the Government to disclose *Giglio* information on its witnesses three weeks prior to trial, but disclosure much earlier than that would pose serious problems. The Court simply cannot take the risk of gambling with the lives of the witnesses in this case. Whatever prejudice Saldarriaga has suffered from continued incarceration is outweighed by the Court's need to ensure the safety of those who appear before it.

It should be emphasized here that there is a firm trial date set for January 28, 1991,

14. *See Accetturo, supra* (outlining factors to be considered in determining whether continued detention violates due process); *Hare*, 873 F.2d at 801 (same); *Mendoza, supra* (same); *Gonzales Claudio*, 806 F.2d at 343 (same); *Melendez–Carrion*, 820 F.2d at 59 (same); *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986) (same).

15. *See Melendez–Carrion, supra* (pretrial incarceration of more than 19 months did not violate due process where the government was not responsible for a significant portion of the delay and the defendant posed a high risk of flight); *United States v. Martinez*, 678 F.Supp. 267 (S.D. Fla.1988) (pretrial incarceration of 20 months upheld where defendant constituted a flight risk and was incarcerated under a previous sentence for eight months of this time); *But see United States v. Ojeda Rios*, 846 F.2d 167 (2nd Cir.1988) (defendant ordered released from custody where he had been detained for over 32 months awaiting trial, trial date was still several months away and would take months to try, and defendant was willing to abide by restrictive conditions of release); *Theron, supra*, (defendant must be severed and tried or released on bond where trial date meant pretrial incarceration of eight months, delays were due to joinder with codefendants, and defendant at all times sought severance and immediate trial).

and that the Court has every intention of commencing trial on that date. The defendant can therefore take some comfort in the fact that his pretrial incarceration is not open-ended or indefinite. Should future circumstances beyond this Court's control indicate a substantial postponement of that date, Saldarriaga may renew his motion to sever and the Court will reconsider the circumstances of his detention and its decision here.

## II. CONCLUSION

In light of the above findings, it is ORDERED AND ADJUDGED that the severance motions are DENIED.

DONE AND ORDERED in chambers at Miami this 9th day of October, 1990.