UNITED STATES of America, Plaintiff,

v.

Michael **ABBELL**, Leonardo Gonzalez, Luis Grajales, Ramon Martinez, Alain Milanes, William Moran, et al., Defendants.

No. 93–0470–CR.

United States District Court, S.D. Florida.

Feb. 22, 1996.

Order Denying Reconsideration May 1, 1996.

William Pearson, Ed Ryan, Asst. U.S. Attys., for Plaintiff.

Roy Black, Miami, FL, for Michael Abbell.

Martin Weinberg, Boston, MA, Albert Krieger, Miami, FL, for William Moran.

### ORDER DENYING MOTIONS TO SEVER, MOTIONS FOR RELIEF FROM PREJUDICIAL JOINDER, AND MOTIONS FOR RELIEF FROM MISJOINDER

HOEVELER, Senior District Judge.

THIS CAUSE came before the Court on the following motions: Defendant **AB-BELL**'s Preliminary Motion for Relief from Prejudicial Joinder, Defendant **ABBELL**'s

Motion for Severance, Defendant **AB-BELL's** Motion for Relief from Misjoinder (filed by Defendant MORAN and adopted by Defendant ABBELL pursuant to this Court's Order of February 15, 1996), Defendant **LEONARDO GONZALEZ'** Motion for Severance, Defendant **GRAJALES'** Renewed Motion for Severance, Defendant **RAMON MARTINEZ'** Motion for Severance, Defendant **MILANES'** Motion for Severance, Defendant **MILANES'** Second Motion for Severance, Defendant **MILANES'** Motion for Relief from Prejudicial Joinder, Defendant **MORAN's** Preliminary Motion for Relief from Prejudicial Joinder, Defendant **MORAN's** Motion for Relief from Misjoinder, and Defendant **MORAN's** [Second] Motion for Relief from Prejudicial Joinder. The Government filed its "Opposition" on July 10, 1995, and an Omnibus Response on January 31, 1996.

## I. INTRODUCTION

The six moving Defendants are named in a nine-count indictment charging fifty-nine defendants with various narcotics-related offenses. All six Defendants are charged in three counts: conspiracy to commit racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count I); conspiracy to import cocaine, in violation of 21 U.S.C. § 963 (Count III); and conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count IV). In addition, Defendants Abbell, Grajales, Martinez, and Moran are charged with substantive racketeering offenses, in violation of 18 U.S.C. § 1962(c) (Count II). All moving Defendants except Defendant Martinez are charged with Count IX, conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Defendants Gonzalez and Grajales are also charged with two counts (Counts V and VI) and four counts (Counts V–VIII), respectively, of importation of cocaine, in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2.

Defendants Abbell and Moran, both of whom are lawyers, move for severance pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure. They maintain that they did not participate in the same series of acts as their non-lawyer co-defendants and that, therefore, the offenses for which they have been charged have been misjoined with the unrelated offenses allegedly committed by their co-defendants.

Defendants Abbell and Moran also move to have their trial severed from that of their non-lawyer co-defendants pursuant to Fed R.Crim.P. 14. They argue that the trial should be severed because their defense will be antagonistic to that of their co-defendants, there is a danger of prejudicial spillover and jury confusion, and a joint trial would deprive them of their right to counsel. They also dispute the Government's contention that separate trials would not serve the interest of judicial economy.

Defendants Gonzalez, Grajales, Martinez, and Milanes move to have their trials severed from their co-defendants so that they each may be tried as quickly as possible, preferably in their own individual trial. These four Defendants maintain that a single trial would result in prejudicial spillover and jury confusion. In addition, Defendants Gonzalez and Milanes argue that they were charged with very few offenses in the indictment, and Defendants Grajales[1] and Milanes[2] contend that the wait for a joint trial would deprive them of their right to speedy trial. Martinez speculates that the lawyers and non-lawyers will have mutually antagonistic defenses. Grajales contends that if he were tried separately, his co-defendants would provide exculpatory testimony in his defense.

The Government argues in response that the significant amount of overlap in the testimony that will be presented against each Defendant would render separate trials an inefficient use of judicial time and resources. It further asserts that a joint trial would not be so large or complex that a jury would not

---

1. Defendant Grajales had his first appearance and was arraigned on February 16, 1995, in the Southern District of Florida. He remains in custody.

2. Defendant Milanes first appeared in the Southern District of Florida on June 5, 1995, and was arraigned on June 23, 1995. He remains in custody.

be able to properly sift and weigh the evidence against each individual Defendant. The Government also warns that severance of the lawyer defendants from the non-lawyer co-defendants would constitute precedent for status-based severances.

The Court will first address Defendants' allegations of misjoinder under Rule 8(b) and then evaluate Defendants' motions for relief from prejudicial joinder and for severance.

## II. DISCUSSION

### A. Misjoinder

▮▮▮ Joinder of defendants in a multiparty indictment is governed by Fed. R.Crim.P. 8(b). As a general rule, "[j]oinder under Rule 8(b) of the Federal Rules of Criminal Procedure is proper where, as here, an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy." *United States v. Alvarez,* 755 F.2d 830, 857 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985), and *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987). The test for determining whether counts have been misjoined, under Rule 8(b), is whether the acts described in the indictment are tied by a "common thread" to each other or the participants. *United States v. Saget,* 991 F.2d 702 (11th Cir.1993); *United States v. McLain,* 823 F.2d 1457, 1467 (11th Cir.1987) (quoting *United States v. Weinstein,* 762 F.2d 1522, 1541 (11th Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986))[3]. The inquiry concerning misjoinder is limited to an examination of the allegations on the face of the indictment. *United States v. Morales,* 868 F.2d 1562, 1567–68 (11th Cir. 1989).

▮▮▮ A RICO conspiracy count can be that "common thread." *See, United States v. Phillips,* 664 F.2d 971, 1016 (5th Cir. Unit B Dec. 1981) (holding that RICO conspiracy

count was the "common thread" tying together the various defendants in marijuana smuggling case), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), and *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166. In the instant case, the RICO conspiracy charge, which alleges that each defendant agreed to further a racketeering enterprise through a pattern of racketeering activity, presents the "common thread." Whether Defendants Abbell and Moran, the two lawyer co-defendants, participated in the same acts as their non-lawyer co-defendants is unimportant, because the offenses of which they and the non-lawyer defendants are accused were allegedly committed in furtherance of the same goal—promoting and protecting the Cali Cartel's drug importation and distribution network. To withstand a charge of misjoinder, the indictment need not indicate that each participant was involved in every phase of the venture, nor that each participant knew of the other participants' roles or identities. *United States v. Wilson,* 894 F.2d 1245, 1253 (11th Cir.), [citing *United States v. Andrews,* 765 F.2d 1491, 1496 (11th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986) ], *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). Hence, there is no misjoinder in the present case.

Having determined that joinder in this case was proper under Rule 8, it becomes necessary to consider defendants' claims of prejudicial joinder under Rule 14. Defendants have also filed motions for severance. As these motions present essentially the same issues as those raised in the motions for relief from prejudicial joinder, they will be addressed simultaneously in the following discussion.

### B. Prejudicial Joinder/Severance

▮▮▮ As a general rule, defendants who are jointly indicted should be tried together. *Morales,* 868 F.2d at 1571; *United States v. Morrow,* 537 F.2d 120, 136 (5th Cir.1976),

---

3. Subsequent to the decision of the United States Supreme Court in *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814, *reh'g denied,* 475 U.S. 1104, 106 S.Ct. 1507, 89 L.Ed.2d 907 (1986), the Eleventh Circuit noted that the portion of the holding in *McLain* which finds that

misjoinder under Rule 8 is inherently prejudicial has been effectively overruled. *United States v. Watson,* 866 F.2d 381, 385 (11th Cir.1989). This does not affect the proposition for which *McLain* is cited in this case.

*cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977)[4]. This is particularly true in conspiracy cases, where charges against multiple defendants may be proven with substantially the same evidence. *United States v. Dorsey,* 819 F.2d 1055, 1058 (11th Cir.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). The decision whether to sever is entrusted to the sound discretion of the trial court. *United States v. Kopituk,* 690 F.2d 1289, 1314–15 (11th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 2090, 77 L.Ed.2d 300 and *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). Severance is only justified when a defendant can show prejudice from which the trial court cannot provide adequate protection. *Dorsey,* 819 F.2d at 1058; *Morrow,* 537 F.2d at 136. The fact that a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials. *United States v. Harris,* 908 F.2d 728, 736 (11th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 979, 112 L.Ed.2d 1063, and *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991). Defendants' allegations of prejudice must be balanced against the interest of judicial economy and concomitant policy favoring joint trials in conspiracy cases. *Kopituk,* 690 F.2d at 1318. To the extent justly possible, conspiracy defendants should be tried together.

In the following discussion, the Court briefly addresses each of defendants' arguments, as raised in the motions for relief from prejudicial joinder and the motions for severance.

### 1. Prejudicial Spillover/Juror Confusion

#### a. As Pertaining to Both Lawyer and Non–Lawyer Defendants

All six moving defendants contend that a joint trial of this length, magnitude, and complexity will inevitably result in prejudicial spillover and juror confusion to defendants' detriment.

While the Third Superseding Indictment in the instant case is quite extensive (59 defen-

dants, 9 counts, 60 racketeering acts, 417 overt acts, 161 pages), nine defendants have already entered guilty pleas. There are only nine defendants presently in the United States and proceeding to trial, and the Government estimates the trial will last three to four months. *Government's Omnibus Response,* p. 3.

While the number of defendants should not be the determinative factor in whether a court grants or denies a motion to sever, severance becomes necessary if the jury will not be able to "individualize each defendant in his relation to the mass." *United States v. Watchmaker,* 761 F.2d 1459, 1476 (11th Cir.1985) (quoting *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 880, 88 L.Ed.2d 917 (1986); *see also, United States v. Martino,* 648 F.2d 367, 385 (5th Cir.1981) (assessing " 'whether ... it is within the capacity of the jurors to ... appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct' "), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 2007, 72 L.Ed.2d 465 and *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). Severance is only justified, however, when the prejudice resulting from a joint trial cannot be remedied by a cautionary instruction from the court. *Morrow,* 537 F.2d at 136; *see also, Kopituk,* 690 F.2d at 1320 (stating that a curative instruction from the court is "the most efficacious tool to protect against" the danger of spillover.) The instant case does not appear to be so complex that any possible prejudice cannot be remedied by curative instructions from the Court.

Both the lawyer defendants and the non-lawyer defendants claim that they will suffer prejudice from a joint trial of this matter, but, again, this is an issue which can be taken care of by appropriate instructions and other trial management tools. The idea of confusion of positions and issues is not significant because the positions of the various defendants are sufficiently different and the Court can acquaint the jury with the appropriate

---

**4.** Fifth Circuit decisions rendered prior to October 1, 1981, are binding on the Eleventh Circuit.

*Bonner v. City of Prichard,* 661 F.2d 1206, 1206 (11th Cir.1981).

role of the United States in its attempt to prove its case against each defendant.

■ Additionally, severance is not justified on the basis of prejudicial spillover/juror confusion, because the prejudice that could arguably result from a joint trial is outweighed by the interest of judicial economy. When determining whether severance is warranted, trial courts should balance defendants' assertions of prejudice against the interest of judicial economy. *Harris,* 908 F.2d at 736; *Phillips,* 664 F.2d at 1016; *Martino,* 648 F.2d at 385; *Morrow,* 537 F.2d at 136. The Government indicates in its response to the severance motions that the majority of the trial time will be taken up by direct and cross examination of defendants' alleged former co-conspirators. *Government's Omnibus Response,* p. 5. The co-conspirators will each testify about their "own personal journey through the organization" and the involvement of multiple defendants. *Government's Omnibus Response,* p. 7. Therefore, according to the Government, multiple trials would entail duplication of much of the testimony. If indeed the time for the presentation of the Government's case would almost double if the cases were severed (as Government's counsel asserts), several of the arguments advanced by defense counsel become essentially moot. Defendants who are pressing the severance must then rely on the claimed prejudice from being joined with some of their former clients and others who are charged with being members of the conspiracy. They claim also they will be unfairly prejudiced because of the inability of the jury to make necessary distinctions. These positions are discussed elsewhere in this order. Suffice it to say that now, for the moment at least, these positions are not persuasive.

*b. As Pertaining to the Lawyer Defendants*

The lawyer defendants, in particular, should have no fear about the jury's ability to "individualize" each defendant. "Marked differences among defendants have been noted to be a source of *reduced* danger of spillover." *United States v. Noriega,* 746 F.Supp. 1548, 1555 (S.D.Fla.1990) [quoting *United States v. Abrams,* 539 F.Supp. 378, 382 (S.D.N.Y.1982)] (emphasis in original). Hence, the lawyer defendants are in little danger of prejudice as a result of the joint trial.

The jury will likely have little difficulty separating and distinguishing the lawyer defendants from the non-lawyer defendants. In any event, the Court is prepared to take all necessary measures to ensure that confusion does not occur. For example, assuming no valid objections, the jury will be permitted to take notes, a seating chart (indicating each defendant and his counsel) will be prepared, and jury instructions will be carefully drafted with the assistance of all counsel.

The lawyer defendants, Abbell and Moran, also argue that the interest in judicial economy will not be served by a joint trial. They maintain that there will be no overlap in the evidence against the lawyer and non-lawyer defendants, or the defenses they employ. If we accept the validity of the chart on page six of the *Government's Omnibus Response,* the Court must conclude otherwise. It shows that many of the same witnesses who will testify about the non-lawyer defendants will also testify about the lawyer defendants.

Defendants Abbell and Moran propose that, in the event that the cases were severed, they would stipulate to portions of the drug-related evidence and, therefore, the case would take much less time to try. The Government, however, asserts that regardless of any stipulations, it would present essentially the same quantum of evidence at the trial of the lawyer defendants, eliminating all possibility of saving time. The Court is not convinced that there would be any major saving of time by having the case severed. Although defendants have suggested stipulations, it does not appear that the Government would agree to such presentation. Even if the Government were to agree, such stipulations would likely be unworkable due to the conditions which would certainly be required by all parties to the stipulations.

Defendants Abbell and Moran also attach much significance to Second Circuit opinions on severance and, in particular, the Eastern District of New York's decision in *United States v. Gallo,* 668 F.Supp. 736 (E.D.N.Y.

1987), *aff'd,* 863 F.2d 185 (2d Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989). The facts of *Gallo* are very different from those in the instant case. In *Gallo,* the court was faced with "a conspiracy to participate in a multi-faceted enterprise." *Id.* at 756. The defendants were involved in at least nine areas of illegal activity, including murder, loansharking, and extortion. *Id.* at 738. In the instant case, however, all of the defendants were allegedly working with the same purpose—to promote and protect the Cali-based organization's drug trafficking network.

## 2. Antagonistic Defenses

Defendant Abbell contends that he will probably testify at trial about his service as Defendant Santacruz–Echeverri's legal counsel. He speculates that such testimony could prejudice Santacruz–Echeverri's defense. In addition, Defendant Martinez anticipates that his defense and that of the lawyer co-defendants will be mutually antagonistic.

■ Severance on the basis of antagonistic defenses is only justified if the alleged antagonistic offenses are "mutually exclusive and irreconcilable." *United States v. Andrews,* 765 F.2d 1491, 1498 (11th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986). In other words, severance is appropriate only in circumstances in which the jury is faced with the problem of being able to believe one defendant's position or another defendant's position—but not both; belief of one position necessitates disbelief of the other. *United States v. Frost,* 61 F.3d 1518, 1526 (11th Cir.1995).

■ In the instant case, Defendants have failed to show that the jury will have to make that choice. While the Court can only speculate as to the nature of Defendants' defenses, it is not apparent that there will be irreconcilable conflicts, or that, with proper curative instructions and evidentiary rulings, prejudice cannot be avoided. At this juncture, there is no reliable evidence of antagonism among the parties of the type to justify severance on that basis. Hence, severance is not warranted on the basis of antagonistic defenses.

■ The Court notes that the argument raised regarding the jury's potential difficulty understanding the subtleties of criminal defense work would apply equally to the trial of the case—whether severed or not. As such, the argument is irrelevant to the issue of antagonistic defenses and sheds little light on the severance analysis.

## 3. Minimal Involvement

■ Defendants Gonzalez and Milanes contend that they should not be tried with their co-defendants because they are alleged to have only minimal involvement in the offenses charged and, therefore, will only be presented with minimal evidence as to their individual roles. Courts within the Eleventh Circuit have displayed great reluctance in granting severance based on *de minimus* evidence arguments. *Watchmaker,* 761 F.2d at 1476. Prejudice is not established simply because a defendant claims to be a minor figure and argues that much of the evidence at trial may apply only to co-defendants. A defendant does not suffer compelling prejudice even if much of the evidence actually produced at trial is applicable only to co-defendants. *United States v. Smith,* 918 F.2d 1501, 1509–10 (1990), *cert. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 and *cert. denied,* 502 U.S. 890, 112 S.Ct. 253, 116 L.Ed.2d 207 (1991); *United States v. Casamayor,* 837 F.2d 1509, 1511 (11th Cir.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). Therefore, severance cannot be granted on this ground alone.

■ Moreover, the defendants who move for severance based on *de minimis* involvement in the offenses do not appear (from the allegations in the Third Superseding Indictment) to be minor participants. Milanes is charged with four counts of the nine count indictment, and Gonzalez is charged with seven counts. Convictions of defendants with far less involvement have been upheld. *See, Harris,* 908 F.2d at 736 (defendant named in only one of seventy-four overt acts and one hour of testimony during four-week trial); *Morrow,* 537 F.2d at 137 (only twenty-five pages out of fifty volumes of transcript dealt with defendant). Therefore, severance is not warranted on these grounds.

## 4. Exculpatory Testimony

Defendant Grajales asserts that if he was severed from his co-defendants, his co-defendants would provide exculpatory testimony in his defense which would not be available in the event of a joint trial—in which his co-defendants would exercise their right against self-incrimination.

▮▮▮▮▮ To obtain a severance based on the exculpatory testimony of a co-defendant, a defendant must show the following: "(1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature, and (4) that a co-defendant would in fact testify if the cases were in fact severed." *Harris*, 908 F.2d at 739 (citing *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir.1970)); *see also, Morrow*, 537 F.2d at 135. Defendant Grajales has suggested the possibility of a *Byrd* affidavit but there has been no proffer, nor specifics advanced, nor affidavit submitted to demonstrate that an accused defendant would testify for another defendant if the cases were severed. As such, Defendant's motion for severance failed to satisfy the relevant requirements and, therefore, must be denied on that ground.

## 5. Speedy Trial

The arguments regarding speedy trial have been addressed in status conferences. The case has already narrowed considerably. Additionally, the inclusion of additional defendants has tolled the statute on a number of occasions, as have the many motions filed. In any event, to avoid constitutional problems, this case will be tried in the relatively near future. At the upcoming status conference on March 1, 1996, the Court will set a date for trial.

## III. CONCLUSION

Because the Court finds that, based on the present record, the defendants have failed to establish either misjoinder or compelling prejudice sufficient to outweigh the public interest in a joint trial, the motions identified above are, therefore, DENIED.

1. This motion was filed on Defendant Abbell's behalf by Roy Black, Esq. The Court notes, however, that Mr. Black filed a Notice of With-

While the Court today denies defendants' motions for severance, there is no restriction on the Court's revisiting this issue in the future should circumstances change.

**DONE AND ORDERED.**

### ORDER DENYING MOTION TO RECONSIDER DENIAL OF SEVERANCE MOTIONS

THIS CAUSE came before the Court on Defendant **ABBELL**'s Motion to Reconsider Denial of Severance Motion, filed March 12, 1996,[1] and Defendant **MORAN**'s Motion for Reconsideration of Order Denying Motions to Sever, Motions for Relief from Prejudicial Joinder and Motions for Relief from Misjoinder, filed March 11, 1996. The Government filed a response on April 5, 1996.

On February 22, 1996, this Court issued an Order which denied all Defendants' motions to sever, motions for relief from prejudicial joinder and motions for relief from misjoinder. In that Order I noted a freedom to revisit the issue should circumstances change. Defendants Abbell and Moran, both of whom are lawyers, seek reconsideration of that Order—although they have failed to indicate any material change in circumstances.

Defendant Moran again argues that there is a danger of prejudicial spillover and jury confusion from a joint trial, and disputes the Government's insistence that separate trials would not serve the interest of judicial economy. Defendant Abbell adopts these arguments and emphasizes that a joint trial will deny him counsel of choice—Defendant Moran joins in this argument as well.

In response, the Government emphasizes that severance of the lawyer defendants on the basis of the prohibitive costs of their chosen attorneys' participation in a longer trial would constitute dangerous precedent.

The Court has reviewed the motions, and has given careful consideration to Defendants' concerns. In essence, both Defendants attempt to fly the flag of judicial econo-

drawal as Temporary Attorney of Record for Michael Abbell on February 29, 1996.

my, and urge that a more expedient result will avail if severance is granted.

■■ The correct consideration of "judicial economy" as an element of the decision whether to sever a criminal trial is premised on the joint trial of indicted co-conspirators. In other words, the presumed public interest in judicial economy and efficiency represented by joint trials is to be balanced against traditional legal arguments in favor of severance (prejudicial spillover, etc.). Defendants Abbell and Moran, however, have advanced the principle of judicial economy and, by arguing that separate trials will result in an overall saving of time, have attempted to justify severance on this basis as well as the others. Despite its creativity, Defendants' argument must fail for it has elided the consideration of more persuasive grounds for severance.

All of the nine defendants presently awaiting trial are charged in Counts I, III, and IV, and eight of the defendants are charged with Count IX—the four Counts with which Defendants Abbell and Moran are charged. The prosecutor, according to his discretionary authority, which was essentially approved by the grand jury, has decided to seek indictment of this case as a single conspiracy with one overarching goal—the promotion and protection of the Cali-based organization's drug trafficking network. This case does not, at this juncture, present a factual picture which mandates severance.

As previously noted in this Court's Order denying severance, the general rule that defendants who are jointly indicted should be tried together is particularly applicable to conspiracy cases, where charges against multiple defendants may be proven with substantially the same evidence. *United States v. Morales*, 868 F.2d 1562 (11th Cir.1989). *See, also, United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1449, 134 L.Ed.2d 568 (1996); *United States v. Freyre–Lazaro*, 3 F.3d 1496, 1501 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994); *United States v. Castillo–Valencia*, 917 F.2d 494, 498 (11th Cir.1990, *cert. denied,* 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991)).

■■ "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).

■■ The Supreme Court, in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), interpreted the right to counsel to include the principle that a defendant be afforded a fair opportunity to secure counsel of his own choice, *id.* at 53, 53 S.Ct. at 58. The Eleventh Circuit has acknowledged this presumptive right to counsel of choice when reviewing orders disqualifying chosen trial counsel. *See, e.g., United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995). The Eleventh Circuit has also held that the right to counsel of choice is not absolute. *Birt v. Montgomery*, 725 F.2d 587 (11th Cir.) (en banc), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). For example, the right to counsel of choice does not in all circumstances give an accused the right to be represented by chosen counsel. A variety of situations may preclude such choice without creating constitutional problems. *See, e.g., United States v. Stuckey*, 917 F.2d 1537 (11th Cir. 1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). The decision I make today neither disqualifies chosen trial counsel nor eliminates Defendant Abbell's and Defendant Moran's "fair opportunity" to secure counsel of their choice. The constitutional mandate has been satisfied.

■■ The Court has found no precedential authority for taking the extraordinary step of granting severance on the counsel of choice issue and is, therefore, hesitant to embark on such a path. The obvious thrust of the counsel of choice argument is that a defendant will have a better chance of acquittal if he is represented by his chosen counsel. However, standing alone, the likelihood that a defendant will have a better chance of acquittal in a separate trial does not entitle that defendant to severance. *Zafiro*, 506 U.S. at 540, 113 S.Ct. at 938–39.

The Court is mindful of Defendants' concerns regarding a fair trial and will be vigilant in addressing these concerns through evidentiary rulings, jury instructions, and other appropriate mechanisms to ensure fairness. "[I]t is clearly the duty of the trial judge in his rulings on evidence to discriminate between evidence offered which tends to support the charge in the indictment and evidence which tends only to show lawful professional activity in representing clients." *United States v. Frankfeld,* 103 F.Supp. 48, 50 (D.Md.), *aff'd,* 198 F.2d 679 (4th Cir.1952), *cert. denied,* 344 U.S. 922, 73 S.Ct. 389, 97 L.Ed. 710 *and reh'g denied,* 345 U.S. 913, 73 S.Ct. 652, 97 L.Ed. 1348 (1953). The Eleventh Circuit recently addressed the concerns of two defendants who sought severance from an attorney co-defendant. Finding that the non-attorney defendants suffered no compelling prejudice from a lack of severance, the court noted that "although [the attorney defendant's] actions were distinct from those of [the non-attorney defendants], it was not difficult for the jury to ferret out the details of each of the individual's criminal acts." *United States v. Knowles,* 66 F.3d 1146, 1159 (11th Cir.1995).

Because the Court again finds that, based on the present record, the defendants have failed to establish compelling prejudice sufficient to outweigh the public interest in a joint trial, the motions identified above are, therefore, DENIED, without prejudice to renew. The Court is cognizant of the need to get this case to trial. By separate Order of this same date, the Court has scheduled hearings on the remaining pre-trial matters and has set this case for trial.

**DONE AND ORDERED.**